

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-15-792

| | |
|---|---|
| GAIN, INC.<br><br>APPELLANT<br><br>V.<br><br>MERANDA MARTIN, SUCCESSOR SPECIAL ADMINISTRATRIX OF THE ESTATE OF VIRGIL BROWN, JR., DECEASED<br><br>APPELLEE | **Opinion Delivered** March 9, 2016<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION<br>[NO. 60CV-13-4061]<br><br>HONORABLE MACKIE M. PIERCE, JUDGE<br><br>REVERSED AND REMANDED |

## M. MICHAEL KINARD, Judge

Appellant Gain, Inc. (Gain), appeals from the trial court's order denying its motion for summary judgment based on the doctrine of charitable immunity. After a de novo review, we conclude that the trial court erred, and we reverse and remand for further proceedings.

Appellee Meranda Martin, the administratrix of the estate of Virgil Brown, Jr., deceased, filed a wrongful-death and survival action against Gain and others in October 2013.[1] Gain purports to be a charitable organization providing services to adults with debilitating major mental illness. Martin asserted that Gain was negligent in providing

---

[1] The other named defendants were Arch Insurance Company; Darrell Davis, individually and as case manager and employee of Gain; and Dr. Leslie Smith, individually and as medical director and employee of Gain. Arch was granted summary judgment, and Martin filed an amended complaint. Martin subsequently filed a second amended complaint against several other defendants who were later dismissed.

services to Brown and to Kenneth Ray McFadden, Jr., which resulted in McFadden killing Brown. Gain filed a motion to dismiss and a motion for summary judgment, asserting the affirmative defense of charitable immunity. Gain later filed an amended motion for summary judgment, along with its articles of incorporation, bylaws, an affidavit from its executive director, and documents to confirm its nonprofit and tax-exempt status.

Martin filed a response along with several documents, including Gain's application for tax-exempt status and tax forms for the years 2007 through 2011. After a hearing, the trial court entered an order denying Gain's motion for summary judgment. The trial court found that Gain had established a prima facie case that it was entitled to summary judgment, but Martin had met her burden of rebutting Gain's entitlement to the defense of charitable immunity solely through her argument that Gain did not receive enough money in contributions or donations to qualify for charitable immunity. Gain now appeals.

As a general rule, the denial of a motion for summary judgment is neither reviewable nor appealable. *Arkansas Elder Outreach of Little Rock, Inc. v. Thompson*, 2012 Ark. App. 681, 425 S.W.3d 779. The general rule does not apply, however, where the refusal to grant a summary-judgment motion has the effect of determining that the appellant is not entitled to its defense of immunity from suit, as the right of immunity from suit is effectively lost if a case is permitted to go to trial. *Id.* This case is, therefore, appealable.

The issue of whether a party is immune from suit is purely a question of law and is reviewed de novo. *Thompson*, *supra*. Our standard of review for summary judgment is well settled:

Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. Once a moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable minds might reach different conclusions from those undisputed facts. On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material question of fact unanswered. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties.

*Jackson v. Sparks Regional Medical Center*, 375 Ark. 533, 539, 294 S.W.3d 1, 4–5 (2009) (citations omitted).

The essence of the charitable-immunity doctrine is that entities created and maintained exclusively for charity may not have their assets diminished by execution in favor of one injured by acts of persons charged with duties under the entity. *George v. Jefferson Hospital Association*, 337 Ark. 206, 987 S.W.2d 710 (1999). Because the doctrine favors charities and results in a limitation of potentially responsible persons whom an injured party may sue, we give the doctrine a very narrow construction. *Thompson*, *supra*. The burden of pleading and proving this affirmative defense is on the party asserting it. *Id*. To determine whether an organization is entitled to charitable immunity, our courts consider the following factors:

(1) whether the organization's charter limits it to charitable or eleemosynary purposes, (2) whether the organization's charter contains a not-for-profit limitation, (3) whether the organization's goal is to break even, (4) whether the organization earned a profit, (5) whether any profit or surplus must be used for charitable or eleemosynary purposes, (6) whether the organization depends on contributions and donations for its existence, (7) whether the organization provides its services free of charge to those

3

unable to pay, and (8) whether the directors and officers receive compensation. *Thompson*, 2012 Ark. App. 681, at 6, 425 S.W.3d at 784. These factors are illustrative, not exhaustive, and no single factor is dispositive of charitable status. *Id*.

The first and second factors are established by Gain's articles of incorporation, which provide that Gain is a public-benefit corporation under the Arkansas Nonprofit Act of 1993 and that its purposes include providing "integrated, comprehensive services for people with mental illnesses, mental retardation, and other diagnoses that impair quality of life" and using any funds "for charitable and educational purposes as a nonprofit corporation." *See Jackson*, *supra*; *Anglin v. Johnson Regional Medical Center*, 375 Ark. 10, 289 S.W.3d 28 (2008). Gain also argues that it is a public charity that is tax exempt under section 501(c)(3) of the Internal Revenue Code. Martin argues only that the articles of incorporation do not contemplate providing services to "violent criminally insane" people like McFadden.

Other evidence submitted by Gain as to the third, fourth, and fifth factors supports Gain's entitlement to charitable immunity. Dennis Wells, Gain's executive director, stated in his affidavit filed with Gain's motion for summary judgment that Gain's financial goal was to break even on a yearly basis. Wells also stated that, since 2011, Gain had not made a profit and had operated at a deficit in each of those years. In the event Gain did make a profit, Wells noted that Gain was required to use the profit for charitable purposes. The articles of incorporation provide that all funds collected shall be applied "to accomplish the purposes for which the corporation is organized." Martin argues that Gain failed to provide information on how its profits were used in years that it earned profits and why no profits

4



were earned in other years, but she offered no evidence to rebut Gain's assertions.

The sixth factor considers whether the organization depends on contributions and donations for its existence. Wells's affidavit states that "Gain depends on contributions and donations, along with state and federal financial assistance, Medicaid, and contracts with state and federal agencies for its existence." Martin argues that Gain was clearly dependent on government grants and Medicaid for its operations, not private gifts and contributions, which totaled only $660 in 2011. Martin contends that the lack of gifts and charitable contributions is an issue that makes summary judgment improper.

In *Neal v. Davis Nursing Association*, 2015 Ark. App. 478, 470 S.W.3d 281, we held that the nursing home, which received only $100 in donations for two consecutive years, clearly failed to satisfy this factor. In other cases, our supreme court has noted that modern hospitals, with rare exception, would find it extremely difficult to operate wholly or predominantly on charitable donations. *Jackson*, *supra*; *George*, *supra*. In *Jackson*, most of the hospital's operating funds were provided through Medicare, Medicaid, and individual patients or their private insurers. The supreme court held that the fact that the hospital received most of its funding through sources other than contributions or donations did not negate its overriding charitable purpose.

As for the seventh factor, Wells's affidavit states that Gain has always provided its services free of charge to those unable to pay. Gain also asserts that it satisfies the eighth factor because, as Wells's affidavit states, Gain's officers and directors are all volunteers who receive no compensation for their services. Gain's bylaws and tax documents support this

assertion.  Martin made no argument disputing Gain's evidence as to these factors.

In addition to the eight factors, we have held that another relevant consideration is whether the charitable-entity form has been abused.  *See Neal*, 2015 Ark. App. 478, at 3, 470 S.W.3d at 283; *Watkins v. Arkansas Elder Outreach of Little Rock, Inc.*, 2012 Ark. App. 301, 420 S.W.3d 477.  The flow of money and the relationship between the facility and other service providers can be critical to determining whether an entity is truly charitable or merely a conduit through which to funnel money and divert profits.  *Neal*, *supra*.  Martin, however, has not offered any argument or evidence that Gain conceals profits or otherwise abuses the charitable-entity form.

As the trial court found, Gain made a prima facie showing of entitlement to summary judgment.  Based on the totality of the evidence and the relevant considerations, we cannot agree with the trial court that Martin met proof with proof sufficient to demonstrate a genuine issue of a material fact when she rebutted the proof of only the single factor of dependence on private donations.  "No single factor is dispositive of charitable status." *Thompson*, *supra*.  Entities with overriding charitable purposes do not lose entitlement to charitable immunity based solely on the fact that they do not depend on donations.  *See Jackson*, *supra*; *Anglin*, *supra*; *George*, *supra*.  Gain established that it was entitled to charitable immunity, and the trial court erred in denying its motion for summary judgment.  We reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

WHITEAKER and HIXSON, JJ., agree.

*Pinnacle Law Firm, PLLC*, by: *Matthew D. Campbell*, for appellant.

*Bennie O'Neil*, for appellee.